UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER CHARLES WRIGHT,

        Petitioner,

v.　　　　　　　　　　　　　　　　　　　CASE NO. 04-CV-71595-DT
　　　　　　　　　　　　　　　　　　　　HONORABLE NANCY G. EDMUNDS
DAVID JAMROG,

        Respondent.
_____/

### OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Christopher Charles Wright has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. Respondent urges the Court to deny the petition. The Court agrees with Respondent that Petitioner is not entitled to habeas relief. Accordingly, the habeas petition will be denied.

### I.  Background

On October 13, 2003, a circuit court jury in Genesee County, Michigan convicted Petitioner of armed robbery, MICH. COMP. LAWS § 750.529, possession of a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS § 750.227b, and felon in possession of a firearm, MICH. COMP. LAWS § 750.224f. The trial court sentenced Petitioner as a habitual offender to two years for the felony firearm conviction, followed by concurrent terms of fifteen to forty years for the armed robbery and thirty-eight to sixty months for being a felon in possession of a firearm. The convictions and sentence arose from the armed robbery of a grocery store in Flint, Michigan shortly after midnight on August 12, 2000. About $1,200.00 in bills and $100.00 in coins were taken during the robbery.

The robber was seen getting into the passenger side of a white Cadillac, which left the parking lot without its lights on. A customer, who had been present in the store during the robbery, alerted one of his friends, who was waiting outside the store, to follow the white Cadillac. The friend, Steven Hardy, followed the Cadillac and wrote down the license plate number. He returned to the store and reported the number to the police. Shortly after the license plate number was broadcast, two officers noticed the car and two men at a residence on Summit Street.

One of the officers captured Petitioner's co-defendant, Rashon Hudgins, at the rear of the house. As he led Hudgins to the squad car, Hudgins stated that the officer had the wrong person and that he was a victim in the incident and had been forced to drive the robbery suspect to the Summit Street address. The police found $255.00 in bills and assorted coins in Hudgins' front pocket along with a fake three-dollar bill, which was later determined to be missing from the grocery store. Rolls of coins also were found in the backyard where the officer had wrestled with Hudgins.

The other officer chased Petitioner, who disappeared from sight. Meanwhile, thirteen-year-old Jeremiah Huntley alerted two other officers who were present in the area that, moments earlier, a stranger had entered his house and run upstairs. The police went in the house and arrested Petitioner, who had discarded his outer clothing and was wearing only his underwear and shoes. The pursuing officer identified Petitioner at trial as the man who had run away from him.

The prosecutor's theory was that Petitioner was the armed robber and that Petitioner's co-defendant, Rashon Hudgins, aided and abetted Petitioner by providing transportation. The

owner of the store and one of his employees identified Petitioner at trial as the robber. Clothing linked to the robber was found on or near Petitioner when he was arrested.

Petitioner did not testify or present any evidence at trial. His co-defendant, Rashon Hudgins, testified that he did not commit a robbery, provide transportation for Petitioner, or know what Petitioner did in the store.

Both defendants were charged with armed robbery. Petitioner also was charged with being a felon in possession of a firearm and felony firearm. The jury found Petitioner guilty as charged, but it convicted Rashon Hudgins of unarmed robbery.

Petitioner raised his habeas claims in the Michigan Court of Appeals, which affirmed his convictions in an unpublished *per curiam* decision. *See People v. Wright*, No. 231386 (Mich. Ct. App. Nov. 22, 2002). On May 30, 2003, the Michigan Supreme Court denied leave to appeal. *See People v. Wright*, 468 Mich. 915; 662 N.W.2d 756 (2003) (table).

Petitioner signed and dated his habeas petition on January 31, 2004. The grounds for relief read:

> I. It was a deprivation of Due Process under Amendments V and XIV of the U.S. Constitution to allow evidence that Defendant was a felon notwithstanding the charged crime.
>
> II. Defendant was deprived of his V and XIV Amendment rights [to] due process when he was tried jointly with another defendant.
>
> III. Defendant was denied his V and XIV Amendment rights to due process when the Court allowed introduction of evidence of flight.
>
> IV. Defendant was deprived of his V and XIV Amendment right to be free from double jeopardy.
>
> V. Defendant was deprived of his VI Amendment Right to the effective assistance of counsel when his trial counsel failed to keep Defendant's status as a felon from the jury, waived objection to

3

>joinder of parties, failed to object to evidence of flight, failed to object to deprivation of Defendant's right to be free from double jeopardy and failed to seek a limiting or cautionary instruction with reference to the statement of the co-defendant.

Respondent maintains in an answer to the habeas petition that Petitioner's claims lack merit or are procedurally defaulted.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.  "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*

opinion) (emphasis in original).

The doctrine of procedural default applies "[w]hen a habeas petitioner fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim." *Seymour v. Walker,* 224 F.3d 542, 549-50 (6th Cir. 2000). Such claims are "procedurally defaulted and may not be considered by the federal court on habeas review." *Id.* An exception to this rule exists when "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To determine whether a prisoner's constitutional claim is procedurally defaulted and barred from habeas review, courts must ascertain whether: (1) there is an applicable state procedural rule and whether the petitioner failed to comply with that rule; (2) the state courts actually enforced the state procedural sanction; (3) the procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim; and (4) the petitioner has shown cause for not complying with the procedural rule and actual prejudice from the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

### III. Discussion

#### A. Evidence of a Prior Felony

The first habeas claim alleges that, notwithstanding the charged crime, Petitioner's constitutional right to due process was violated when the prosecutor introduced evidence that Petitioner had been convicted of a prior felony. Petitioner contends that the prosecutor's repetitive remarks about his status as a felon were prejudicial, misleading, and unnecessary.

Respondent argues that this claim is procedurally defaulted and not cognizable on habeas review because it involves matters of state law only.

In Michigan, "'[a] defendant may not waive objection to an issue before the trial court and then raise it as an error' on appeal." *People v. Carter,* 462 Mich. 206, 214; 612 N.W.2d 144, 149 (2000) (quoting *People v. Fetterly*, 229 Mich. App. 511, 520; 583 N.W.2d 199, 204 (1998)). Petitioner violated the rule by stipulating to the fact that he had been convicted of a felony and later objecting on appeal to the admission of the evidence at his trial. The Michigan Court of Appeals denied relief in part because Petitioner stipulated to the admission of evidence about which he complained.

Petitioner alleges that his trial attorney should have kept evidence of Petitioner's status as a convicted felon from the jury. However, Petitioner's prior conviction was an element that the prosecutor had to establish to prove the offense of felon in possession of a firearm. To that end, the prosecutor presented a witness, who testified that Petitioner was convicted of a prior felony in the early part of 1999. (Tr. Oct. 12, 2000, at 464.)

Furthermore, the nature of the prior offense was not disclosed to the jury, and the trial court instructed the jurors that a prior conviction is not evidence that the defendant committed the alleged crime in this case. The trial court also stated that the jurors could use evidence of a past crime only for the purpose of deciding whether to believe the co-defendant. (*Id*. at 651-52).

Although "[t]here is no way of knowing whether the jury made [an] improper character-propensity inference," *Albrecht v. Horn*, 314 F. Supp. 2d 451, 472 (E.D. Pa. 2004), the Court must presume that the jurors followed their instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Furthermore, Petitioner was identified at trial as the robber, and circumstantial

6

evidence implicated him in the robbery. Thus, there is no reason to believe that the jury made an improper character-propensity inference on the basis of Petitioner's prior conviction, and "[t]he Court's confidence in the jury's verdict is unshaken." *Albrecht,* 314 F. Supp. 2d at 472 (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

In conclusion, defense counsel's failure to keep evidence of Petitioner's prior conviction from the jury did not amount to deficient performance and did not prejudice the defense. Therefore, defense counsel was not constitutionally ineffective, and he cannot be deemed "cause" to excuse Petitioner's default.

The Court need not determine if Petitioner was prejudiced by the alleged constitutional error because he has not shown "cause." *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003). Nor will a miscarriage of justice occur from the Court's failure to adjudicate Petitioner's claim on the merits. Petitioner has not produced any new evidence demonstrating that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Even if Petitioner's claim were not procedurally defaulted, the claim has no merit. There is no Supreme Court decision holding that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.), *cert. denied sub nom Bugh v. Bradshaw*, 540 U.S. 930 (2003). Thus, the state appellate court's alternate conclusion -- that Petitioner's claim provided no basis for reversal and that he was protected from prejudice by adequate safeguards -- cannot be deemed "contrary to" Supreme Court precedent under § 2254(d)(1). *Id*. at 513.

7

### B. The Joint Trial

Petitioner and Rashon Hudgins were jointly tried before the same jury. Petitioner alleges that the joint trial deprived him of due process because the State pitted the two co-defendants against one another. According to Petitioner, his co-defendant's exculpatory statements to a police officer (that he was a victim and had been forced to participate in the robbery) tainted the trial and cast blame on Petitioner. Respondent argues that this claim is procedurally defaulted because Petitioner failed to object to the joint trial and because the Michigan Court of Appeals relied on the lack of an objection to deny relief.

It is true that, before trial, Petitioner did not object to having a joint trial. However, his attorney did move for a mistrial after Officer Michael Lasky testified about Rashon Hudgins' spontaneous comments that an armed robbery occurred and that he was a victim and hostage and had been forced to drive the other suspect. Defense counsel explained that Officer Lasky's testimony was a surprise to him and that he would have requested a separate trial if he had known in advance what Lasky would say. (Tr. Oct. 11, 2000, at 306-07; Tr. Oct. 12, 2000, at 322-25.) Because defense counsel did object when the co-defendant's disputed pretrial statements became known to him, the state court's reliance on Petitioner's failure to object was not a valid basis for denying relief.

Even if Petitioner's claim is procedurally defaulted, "[p]rocedural default is not a jurisdictional bar to review on the merits." *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *petition for cert. filed* (U.S. Oct. 4, 2005) (No. 05-7004). In other words, "federal courts have the power to reach the merits notwithstanding a state procedural default." *Batchelor v. Cupp*, 693 F.2d 859, 863 n.2 (9th Cir. 1982) (citing *Fay v. Noia*, 372 U.S. 391, 438 (1963)). The

Court, therefore, will excuse the alleged procedural default and address the merits of Petitioner's claim.

The Court begins its analysis by noting that "[j]oint trials 'play a vital role in the criminal justice system.' They promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Marsh*, 481 U.S. at 209-10). Joint trials are favored "when charges will be proved by the same evidence and result from the same acts." *United States v. Beverly*, 369 F.3d 516, 534 (6th Cir.), *cert. denied*, __ U.S. __, 125 S. Ct. 122 (2004). In Michigan,

> the decision to sever or join defendants lies within the discretion of the trial court. Severance is mandated under [Michigan Court Rule] 6.121(C) only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice. The failure to make this showing in the trial court, absent any significant indication on appeal that the requisite prejudice in fact occurred at trial, will preclude reversal of a joinder decision.

*People v. Hana*, 447 Mich. 325, 346-47; 524 N.W.2d 682, 690-91 (1994).

Petitioner and Rashon Hudgins were charged with the same armed robbery, and they did not present antagonistic defenses. Both men maintained that the inconsistent testimony provided by prosecution witnesses was sufficient to raise a reasonable doubt about their guilt.

Furthermore, this is not a case in which a nontestifying co-defendant's confession that clearly implicated the other defendant was admitted at their joint trial. *Cf. Bruton v. United States*, 391 U.S. 123 (1968). Rashon Hudgins testified at trial where he denied making the comments in question and testified favorably to Petitioner. Under these circumstances, Hudgins' comments to the arresting officer did not violate Petitioner's rights under the Confrontation Clause. *Nelson v. O'Neil*, 402 U.S. 622, 627-30 (1971); *Hutchison v. Bell*, 303 F.3d 720, 731

(6th Cir. 2002), *cert. denied*, 539 U.S. 944 (2003).

Petitioner nevertheless alleges that, had he been tried separately, the three-dollar bill found on Hudgins and certain other evidence would not have been admissible at his trial. However, "[a]bsent a showing of substantial prejudice, spillover of evidence from one case to another does not require severance." *United States v. Gallo*, 763 F.2d 1504, 1526 (6th Cir. 1985)). Furthermore, the trial court instructed the jurors that the defendants were presumed innocent and that the prosecutor was required to prove each element of the charged crimes beyond a reasonable doubt. The court charged the jury to consider each defendant separately. The court also stated that each defendant was entitled to have his case decided on the evidence and law applicable to him and that Petitioner's failure to testify must not affect their verdict in any way. (Tr. Oct. 12, 2000, at 650-51, 656.) These instructions sufficed to cure any possibility of prejudice. *See Zafiro*, 506 U.S. at 541. Petitioner was not entitled to severance merely because he would have had a better chance of acquittal in separate trials. *Id.* at 540.

Finally, any error resulting from a joint trial is subject to harmless-error analysis. *Jenkins v. Bordenkircher*, 611 F.2d 162, 169 (6th Cir. 1979). The evidence against Petitioner was so overwhelming that Hudgins' comments and other evidence linking Hudgins to the robbery could not have had a "substantial and injurious effect or influence" on the jury's verdict and was harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

The Michigan Court of Appeals concluded on review of Petitioner's claim that Petitioner was not entitled to a separate trial or to a mistrial following the officer's testimony about Rashon

Hudgins' comments to him. For all the reasons given above, this Court concludes that the state court's decision was not contrary to, or an unreasonable application of, Supreme Court precedent.

### C. Evidence of Flight

The third habeas claim alleges that Petitioner was deprived of his constitutional right to due process when the trial court allowed the prosecutor to introduce evidence of Petitioner's flight from the police. Petitioner maintains that the probative value of the evidence was outweighed by its prejudicial impact. Respondent argues that this claim is procedurally defaulted because the Michigan Court of Appeals determined that the issue was not preserved for appellate review due to Petitioner's failure to object to the evidence at trial.

As a general rule, in Michigan, "issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances." *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994). Petitioner violated this rule by not objecting at trial to evidence of his flight from the police. The Michigan Court of Appeals denied relief due to Petitioner's failure to object at trial and because no clear or obvious error occurred as a result of admitting the evidence.

Although Petitioner contends that his attorney was cause for his failure to object, the Court would have to conclude that Petitioner's claim had no substantive merit even if it were not procedurally defaulted. The reason for this conclusion is that "federal habeas review of state court evidentiary rulings is extremely limited." *Jordan v. Hurley*, 397 F.3d 360, 362 (6th Cir. 2005) (citing *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990)). State court rulings on the admission or exclusion of evidence usually may not be questioned in a habeas corpus proceeding

unless the error rendered the trial fundamentally unfair. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)), *cert. denied*, __ U.S. __, 125 S. Ct. 168 (2004); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

"Courts . . . have 'consistently doubted the probative value in criminal trials' of flight evidence." *United States v. Oliver*, 397 F.3d 369, 376 (6th Cir. 2005) (quoting *Wong Sun v. United States*, 371 U.S. 471, 483 n.10 (1963)). In Michigan, however, such evidence is admissible to show consciousness of guilt. *People v. Coleman*, 210 Mich. App. 1, 4; 532 N.W.2d 885, 887 (1995). Furthermore, the trial court instructed the jurors that evidence of flight does not prove guilt. The court explained that a person may run, hide, or flee for innocent reasons such as panic, mistake, or fear. The court charged the jurors to decide whether the evidence was true and, if true, whether it demonstrated that the defendants had a guilty state of mind. (Tr. Oct. 12, 2000, at 658.) Therefore, the admission of evidence that Petitioner ran away from the police was not fundamentally unfair, and Petitioner's right to due process was not violated. His evidentiary claim is not cognizable on habeas review.

### D.  Double Jeopardy

Petitioner alleges next that his multiple convictions violated the Double Jeopardy Clause. He claims that only one offense occurred (a robbery was accomplished with a gun) and, therefore, his three convictions constitute multiple punishments for the same offense. The Michigan Court of Appeals concluded that Petitioner's convictions did not violate double jeopardy protections. Petitioner nevertheless seeks to have the Court vacate his conviction for felon in possession of a firearm.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb. . . ." U.S. CONST. amend. V. The Clause "is applicable to the States through the Fourteenth Amendment," *Benton v. Maryland*, 395 U.S. 784, 787 (1969), and it protects . . . "against multiple punishments for the same offense." *Justices of Boston Mun. Ct. v. Lydon*, 466 U.S. 294, 307 (1984).

### 1.  Legislative Intent

"The traditional test for double jeopardy claims is the 'same elements' test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932)." *Rashad v. Burt*, 108 F.3d 677, 679 (6th Cir. 1997). The "same elements" test for "determin[ing] whether there are two offenses or only one, is whether each [statutory] provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. In other words, the "test asks whether each offense contains an element not contained in the other." *United States v. Forman*, 180 F.3d 766, 768 (6th Cir. 1999). "[A] mere overlap in proof between two prosecutions does not establish a double jeopardy violation." *United States v. Felix*, 503 U.S. 378, 386 (1992).

It is questionable whether *Blockburger* applies here, because the *Blockburger* test "is a rule of statutory construction which guides federal courts in determining the scope of *federal* statutes." *Banner v. Davis,* 886 F.2d 777, 781 (6th Cir. 1989) (emphasis in original). "It does not necessarily apply to a federal court's construction of a state statute." *Id*. at 780. "Even if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Ohio v. Johnson*, 467 U.S. 493, 499 n.8 (1984).

### a. Felon in Possession and Felony Firearm

The Michigan Supreme Court has determined that the Michigan Legislature intended to provide for an additional felony charge and sentence whenever a person possessing a firearm committed a felony other than the four felonies explicitly enumerated in the felony firearm statute. *See People v. Calloway,* 469 Mich. 448, 452; 671 N.W.2d 733, 735 (2003). The four felonies enumerated in the statute are: unlawful sale of a firearm, MICH. COMP. LAWS § 750.223; carrying a concealed weapon, MICH. COMP. LAWS § 750.227; unlawful possession of a pistol by a licensee, MICH. COMP. LAWS § 750.227a; and alteration of identifying marks of a firearm, MICH. COMP. LAWS § 750.230. *Id.*, 469 Mich. at 452 n.4; 671 N.W.2d at 735 n.4. Because felon in possession is not one of the exceptions listed in the statute, the Michigan Supreme Court has concluded that a defendant can be given cumulative punishments for both felon in possession of a firearm and felony firearm without violating the Double Jeopardy Clause. *See id.*, 469 Mich. at 452; 671 N.W.2d at 735.

### b. Felon in Possession and Armed Robbery

State court decisions lead this Court to believe the Michigan Legislature also intended to authorize cumulative punishments for felon in possession and armed robbery. The statutory language of the felon in possession statute "is clearly intended to keep any and all handguns out of the hands of convicted felons." *People v. Brown*, 249 Mich. App. 382, 386; 642 N.W.2d 382, 385 (2002). "In contrast, it is clear from the language of the armed robbery statute that the legislature intended to prohibit takings accomplished by an assault and the wielding of a dangerous weapon." *People v. Parker*, 230 Mich. App. 337, 343 ; 584 N.W.2d 336, 339 (1998). Because the legislative intent of these two offenses differ and because the state courts'

constructions of state law are binding on this Court, the Court's inquiry is at an end.

## 2. Analysis under *Blockburger*

Even if *Blockburger* applies, the offenses in question satisfy the Blockburger test. The elements of felon in possession of a firearm are: (1) a prior felony conviction, (2) possession of a firearm, (3) less than the statutory amount of time has elapsed since the person served the prison term for the prior felony, and (4) the person paid all fines, served all terms of imprisonment, and successfully completed all conditions of probation or parole for the violation. MICH. COMP. LAWS § 750.224f. The elements of felony firearm are possession of a firearm during the commission or attempted commission of a felony. *People v. Akins*, 259 Mich. App. 545, 554; 675 N.W.2d 863, 873 (2003) (quoting *People v. Avant*, 235 Mich. App. 499, 505; 597 N.W.2d 864 (1999)). "The elements of armed robbery are: (1) an assault, (2) a felonious taking of property from the victim's person or presence, and (3) the defendant must be armed with a weapon described in the statute." *People v. Johnson*, 206 Mich. App. 122, 123; 520 N.W.2d 672, 673 (1994). The weapon described in the statute is "a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon. . . ." MICH. COMP. LAWS § 750.529.

To prove that a defendant is a felon in possession of a firearm, the prosecutor must show that the defendant was convicted of a prior felony. A prior felony conviction is not required to prove the offense of felony firearm. Furthermore, the felony firearm statute requires one to have possessed a firearm during the commission or attempt to commit a felony. One can be a felon in possession of a firearm without having committed or attempted to commit a felony. Thus, each of the two offenses (felon in possession and felony firearm) contains an element which is not an

15

element of the other offense.

Felon in possession also differs significantly from armed robbery. Having a prior felony conviction is not an element of armed robbery, and one can commit an armed robbery without possessing a firearm or being a felon. Thus, felon in possession and armed robbery contain elements unique to each offense and at least one element that is not an element of the other offense.

The Double Jeopardy Clause was not violated by Petitioner's three convictions. Consequently, the state court's conclusion that the protection against double jeopardy was not violated did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### E. Assistance of Counsel

The fifth and final habeas claim alleges that Petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel. Petitioner contends that defense counsel should have: (1) prevented the jury from learning that he had a prior felony conviction, (2) objected to (a) the joint trial, (b) evidence of flight, and (c) the violation of the Double Jeopardy Clause, and (3) sought a limiting or cautionary instruction regarding the co-defendant's spontaneous comments to the arresting officer. The Michigan Court of Appeals concluded on review of this claim that trial counsel did not commit any unprofessional errors that affected the outcome of Petitioner's trial.

To prevail on an ineffectiveness claim, Petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Petitioner "must show that counsel's representations fell below an objective

standard of reasonableness." *Id*. at 688.  He also must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  "Unless a defendant makes both showings [deficient performance and resulting prejudice], it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Defense counsel was not ineffective for stipulating to Petitioner's status as a felon because Petitioner's prior conviction likely would have been revealed even if defense counsel did not stipulate to the evidence.  The evidence was necessary to prove an element of one of the charged offenses (felon in possession of a firearm).  Furthermore, the trial court gave a proper jury instruction on use of the evidence, and the nature of the offense was not disclosed to the jury.

Defense counsel was not ineffective for agreeing to a joint trial, because the defendants did not maintain antagonistic defenses, and defense counsel was unaware before trial of the co-defendant's comments to the arresting officer.  In addition, the trial court charged the jurors to consider each defendant separately and not to assume that the defendants were guilty or associated with each other simply because they were on trial together.

Defense counsel's failure to object to evidence of flight did not amount to ineffective assistance because the evidence was admissible under state law and because the trial court charged the jurors that evidence of flight does not mean a person is guilty.  Defense counsel was not ineffective for failing to object to the multiple charges against Petitioner because the Double Jeopardy Clause was not violated.

Finally, the alleged failure to seek a limiting or cautionary instruction regarding the co-defendant's statement was not indicative of deficient performance because the co-defendant denied making the statement. Even if defense counsel's performance was deficient in this regard, the alleged deficiency did not prejudice the defense in light of the other evidence against Petitioner.

For all these reasons, the Court concludes that defense counsel's performance was not deficient and did not prejudice the defense. Petitioner has failed to shown both prongs of a *Strickland* claim and, therefore, has not demonstrated that his attorney was ineffective. The state court's conclusion that trial counsel did not commit any unprofessional errors that affected the outcome of the trial was not contrary to, or an unreasonable application of, *Strickland*.

## IV. Conclusion

Petitioner's claims lack merit or are procedurally defaulted. Accordingly, the application for a writ of habeas corpus [Doc. #1, Apr. 28, 2004] is DENIED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  December 1, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 1, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager